635 F.Supp. 642 (1986)
PEOPLES BANK OF LINCOLN COUNTY, Plaintiff,
v.
UNITED STATES of America, Farmers Home Administration, et al., Defendants.
No. 84-2378C(4).
United States District Court, E.D. Missouri, E.D.
May 20, 1986.
*643 Dale E. Cope, Troy, Mo., for plaintiff.
Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo. and Susan Slater, Atty., Dept. of Justice, Washington, D.C., for defendants.

MEMORANDUM AND ORDER
CAHILL, District Judge.
Plaintiff Peoples Bank of Lincoln County brought this action to recover $10,000 from the United States, acting through the Farmers Home Administration (FmHA) for losses sustained by reason of loans made to Gary Hagemeier. Plaintiff claims that it relied on the oral and written representations of FmHA's County Supervisor Earl Morris that FmHA would be making a loan to Gary Hagemeier and that such loan would be used to reimburse the bank for advances made. The cause came on for trial before this Court sitting without a jury on March 26, 1986. Based on the arguments of counsel, the stipulations of the parties, and all other papers and records herein, the Court makes the following findings of fact and conclusions of law.
Peoples Bank (the bank) is a banking corporation, duly organized and existing under and by virtue of the laws of the State of Missouri.
FmHA is an agency of the United States government.
At the times involved in this action, Gary F. Hagemeier was a Lincoln County farmer and Earl R. Morris was County Supervisor of FmHA.
The FmHA is authorized to make various types of loans to farmers. Included in the list are farm ownership and economic emergency loans.
Between April 1 and July 31, 1981, the bank had extended loans to Mr. Hagemeier totaling $19,650 exclusive of interest.[1]
The procedure for processing a loan application from a farmer is as follows: the County Supervisor, after receiving the application, submits it to the County Committee for review and recommendation. If the County Committee acts favorably on the application (i.e., finds the borrower eligible), it so certifies and returns the application, with the certification to the County Supervisor for final approval (provided the amount of the loan applied for is within the scope of the County Supervisor's approval authority, as fixed by regulation) or disapproval. The County Supervisor has no authority to either approve or disapprove an economic emergency loan until after receipt of certification from the County Committee.
When a county supervisor approves a loan within the scope of his authority, funds with which to make the loan are requested from the National Finance office of the FmHA. Procurement of the money from the national finance office can often take some time.
In April or May, 1981, Gary Hagemeier applied to FmHA for an economic emergency loan. Mr. Hagemeier testified that he needed the money right away. Further, he testified that FmHA told him he could borrow the money from a bank and FmHA would repay the loan if he would pay the interest. Upon receipt of this information, Mr. Hagemeier went to plaintiff bank, *644 sought, and received the above referenced loans. Initially, the bank made the loans to Mr. Hagemeier upon the oral representations of Earl Morris, County Supervisor. The first such representation was made on or before April 1, 1981. At the bank's request, Earl Morris reduced his representations to writing by letter dated July 31, 1981. This letter stated in part:
"FmHA is making an emergency loan to Mr. and Mrs. Gary Hagemeier.... It is anticipated that loan closing will be in approximately 30 days.
At the time of loan closing[,] FmHA will reimburse you any amount advanced Mr. and Mrs. Hagemeier for crop production."
At trial, Earl Morris testified that by this representation he intended to give the bank the status of the Hagemeier loan.
FmHA did not make the loan referred to in Morris' July 31, 1981, letter, nor has it reimbursed plaintiff for any of the amounts loaned Gary Hagemeier during 1981.
Plaintiff, having conceded that Earl Morris as County Supervisor of FmHA lacked the actual authority to guarantee repayment of the Hagemeier's loans on behalf of defendant, argues that Morris had the apparent authority to make the representations previously discussed. Plaintiff also contends that defendant should be estopped from denying the existence of the agreement Earl Morris purported to make on its behalf.
The issue in this case reduces itself very simply to whether Mr. Morris had any authority to promise the repayment of the loans which the bank made to Gary Hagemeier in 1981.
Under the regulations, county supervisors have no authority to guarantee repayment of loans made to farmers by lending institutions. County supervisors may execute formal Loan Note Guarantees which are defined as the signed commitment (form 449-34) issued by FmHA setting forth specifically or by reference the terms and conditions of the guarantee. [7 C.F.R. § 1980.6(14)]. Plaintiff does not contend that its "guaranty for reimbursement" was procured through compliance with the regulatory scheme, nor is the letter relied on by plaintiff the "form" described in the regulations. Moreover, while Earl Morris as County Supervisor could execute a loan note guarantee, final review and approval of such guarantee is vested in the State Director of FmHA. 7 C.F.R. §§ 1980.61(g), 1980.454, 1980.461(G)(3) (1981).
The scope of a county supervisor's duties, and authority is set forth in the applicable regulations. Any action taken by Earl Morris which is outside the scope of the regulations is likewise outside the scope of his authority. To the extent Morris' letter of July 31 can be characterized as a "loan guarantee," such guarantee does not comport with the regulatory provisions and therefore constitutes an unauthorized act for which defendant cannot be held accountable.
Plaintiff has also argued that defendant should be estopped from denying the agreement Earl Morris purported to make on its behalf.
Fundamental to an estoppel claim against the government is that, in addition to satisfying the elements of ordinary estoppel, the governmental conduct complained of must amount to affirmative misconduct. Free Enterprise Canoe Renters Ass'n. v. Watt, 711 F.2d 852 (8th Cir.1983); Laborers' International Union, Local No. 42 v. Smith, 585 F.Supp. 52 (E.D.Mo.1983). In the instant matter, plaintiff made no showing of misconduct; consequently no reason exists for an estoppel in this matter.
The Court's sympathies lie with the plaintiff in this matter; however, the law in this instance is clear and judgment must issue in defendant's favor. Defendant is admonished to safeguard against future occurrences of this sort which often destroy the public's trust and confidence. Accordingly,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment *645 be entered in favor of defendant in this matter.
NOTES
[1] Plaintiff was able to collect the sum of $3,877.96 in principal from Mr. Hagemeier, who on August 2, 1984, received a discharge in bankruptcy. This left a remaining balance of $15,772.04. On December 11, 1985, plaintiff filed an amended complaint in which it reduced its' prayer for relief from $15,772.04 to $10,000 so that this action could come within the jurisdiction of this Court.